ORIGINAL

FILED

20 FEB 04 PM 3: 21

DIS... ...TAH

BY:

ALAIN C. BALMANNO – 3985
Assistant Utah Attorney General
160 East 300 South, Sixth Floor
P. O. Box 140856
Salt Lake City, UT 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MELVIN EUGENE SMITH, | **MEMORANDUM IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT** |
| Plaintiff, | |
| v. | |
| RICHARD McGARDEN, M.D., KENNON TUBBS, M.D., JOHN DOES 1-10, UTAH STATE PRISON, | Case No. 2:03 CV 00566DAK |
| Defendants. | Judge:  Dale A Kimball |
| | Magistrate Judge: David Nuffer |

Defendants Richard M. Garden and Kenneth G. Tubbs, through counsel, Alain C.

Balmanno, Assistant Utah State Attorney, submit this Memorandum in Support of Motion for

Summary Judgment.

24

Plaintiff, acting pro se, has filed a complaint alleging a violation of the Eighth Amendment, and seeking damages for "deliberate indifference to serious medical needs" *Complaint* at ¶ C. 1a.(1).

## STATEMENT OF FACTS

Facts are taken from Exhibit 1, excerpts of medical record, and Exhibit 2, Declaration of Dr. Kennon Tubb, Exhibit 3, Legislative Fiscal Analyst Report, and Exhibit 4, Hepatitis C Clinic Protocol.

1.  Plaintiff is currently an inmate at the Utah State Prison. (Complaint at p. 2).

2.  Plaintiff has been continually incarcerated since July 27, 1993.

3.  An Analysis of Cost and Service within the Utah Department of Corrections Bureau of Clinical Services was prepared by at the Request of the Legislative Fiscal Analyst on November 18, 2003.  Pages relevant to Hepatitis C treatment at the Utah State Prison are attached as Exhibit 3 (Smith 0911, 0940-0941).

4.  The UDOC in conjunction with Dr. Teitze from the University of Utah Medical Center, have developed a protocol for the treatment of Hepatitis C.  Exhibit 4 (Smith 0909-0910).

5.  July 8, 1999, plaintiff reported to Nurse Lisa Anderson that he had shared a needle for drug use and is now worried that he might have aids or hepatitis. Smith 0208.

6.  August 2, 1999, plaintiff requested HIV testing and a liver function test (LFT). Smith 0212.

2

7.      August 11, 1999, plaintiff's lab results showed elevated LFT's.  A Hepatitis panel was ordered for further evaluation.  Smith 0214.

8.      August 12, 1999, plaintiff Hepatitis panel showed him reactive for Hepatitis C. Smith 0216.

9.      August 26, 1999, plaintiff met with Pauline Sturdy.  Ms. Sturdy informed plaintiff that he was positive for Hepatitis C and provided him with the protocol and written materials on Hepatitis C.  Smith 0218-0219.

10.     August 31, 1999, plaintiff requested additional information on Hepatitis C and future treatment with Interferon.  Smith 0221.

11.     September 25, 1999, plaintiff's questions about Hepatitis were answered.  Smith 0230.

12.     December 10, 1999, plaintiff was concerned about Hepatitis B.   Plaintiff was informed that he did not have Hepatitis B but Hepatitis C. Smith 0236-0237.

13.     January 3, 2000, plaintiff was seen regarding his concern of a past diagnosis of Hepatitis C and his current LFT's.  He has significantly improved since one month ago.  It was recommended that the LFT test be repeated in six months. Smith 0242.

14.     May 10, 2000, plaintiff requested vaccinations for Hepatitis A and B.  LFT's were normal in March 2000.  The vaccinations were denied at this time.  Smith 0269.

15.     August 2, 2000, a review of plaintiff's LFT showed them slightly elevated.  Dr. Tubbs scheduled follow-up tests in six months.  Smith 0286.

3

16.    February 6, 2001, plaintiff's lab results show a mild elevation in LFT's without definite active disease.  LFT test were scheduled to be repeated in six months. Smith 0337.

17.    February 14, 2001, plaintiff was informed of his LFT test results.  Smith 0340

18.    May 10, 2001, plaintiff reported feeling more fatigue.  New LFT tests ordered for review and comparison with past values.  Smith 0365.

19.    August 9, 2001, continued elevation of LFT labs.  Recheck scheduled for four months.  Smith 0397.

20.    February 5, 2002, Dr. Tubbs discussed plaintiff's LFT levels.  Plaintiff did not appear jaundiced at this time and there was no change in his hepatic pain. Hepatitis C labs were elevated in December.  LFT labs ordered to reevaluate LFT status and frequent monitoring.  Smith 0510.

21.    February 7, 2002, plaintiff's lab results were reviewed. Smith 0513.

22.    August 13, 2002, plaintiff requested to talk to the doctor regarding the results of his liver blood test.  Smith 0639.

23.    August 15, 2002, Dr. Kennon Tubbs met with plaintiff and discussed his lab results.  Dr. Tubbs explained to plaintiff that due to his mental status and chronic neck/back problems that he would not be a good candidate for Interferon treatment at this time.  Smith 0640-0641.

24.    October 25, 2002, Dr. Kennon Tubbs met with plaintiff regarding his request for Interferon treatment.  Plaintiff was again told that due to his chronic neck and

4

back disease that he would not be a candidate for the medication due to the side effects of the medication causing joint pain.  Dr. Tubbs noted that plaintiff has a very difficult time dealing with the joint pain of his current disc disease and the Interferon would complicate that issue.  Smith 0677.

25.    January 15, 2003, a consultation with the HCV Clinic denied by Utilization Committee.  Patient is not a candidate at this time. Smith 0718.

26.    January 28, 2003, plaintiff was placed on suicide watch with visual checks every 30 minutes.  Plaintiff mental state unstable.  Smith 0724 .

27.    February 27, 2003, plaintiff was provided with the results of his recent LFT test. Plaintiff was advised that a Gallbladder Ultrasound is not indicated currently. Smith 0747-0749.

28.    March 10, 2003, plaintiff was due to be seen in Hepatitis C Interferon teleconference, University Medical Center Clinic.  Hepatitis C Virus genotype was not done at this time, but will be done if he is going to start the treatment program.  Smith 0758.

29.    March 12, 2003 evaluation for Interferon treatment.  Plaintiff's LFT's considerably elevated.  Plaintiff has been an inmate since July 1993.  Plaintiff had several tattoos done at the prison and stated that he had been an IV drug user last in 1998.  Plaintiff believes he got the Hepatitis from tattooing that he was doing during a six-month period prior to diagnosis.  Smith 0760.

30.    April 10, 2003, Dr. Tubbs reviewed plaintiff's chart.  He was concerned that

5

plaintiff was not a good candidate because of his chronic complaints of chronic

pain and joint problems requiring physical therapy and multiple medications. Dr.

Tubbs informed plaintiff that the most common side effect of the Interferon is

joint aches and muscle fatigue. Plaintiff was told if the Interferon increased his

pain that the treatments would be discontinued due to intolerable side effects.

Smith 0776.

31. April 11, 2003, plaintiff was started on the Interferon treatments. Smith 0778.

32. April 14, 2003, plaintiff was informed follow-up labs would be due in two weeks

and that Dr. Tubbs would then review his progress. Smith 0779.

33. April 16, 2003, plaintiff asked Dr. Tubbs if there was something extra that could

be done for his joint pain since he is on Interferon. Plaintiff knew that joint pain

was a common side effect of the Interferon treatments. Dr. Tubbs informed

plaintiff that he was already on too much pain medication and if he required more,

the Interferon treatment would have to be discontinued. Plaintiff informed Dr.

Tubbs that he wanted to remain on the Interferon treatment. Smith 0781-0782.

34. April 23, 2003, Dr. Tubbs referred plaintiff to mental health for an evaluation

regarding his increasing depression. Smith 0786.

35. May 8, 2003, Dr. Egli increased plaintiff's Prozac prescription. Smith 0796

36. May 20, 2003, plaintiff was examined due to a rash he developed where he

received his Interferon injection. Smith 0804.

6

37.    May 21, 2003, evaluation of side effects of Hepatitis C treatment.  Interferon

treatment was discontinued. Smith 0805-0807.

38.    May 29, 2003, plaintiff complained to Dr. Tubbs stating "we are causing him

physical harm".  Dr. Tubbs had previously ordered the Interferon discontinued

however, plaintiff was telling the med-techs that Dr. Tubbs had not taken him off

the medication.  Inmate found to be non-compliant with medical staff. Smith

0812.

39.    June 2, 2003, plaintiff mental health was reviewed.  Plaintiff's Prozac treatment to

be decreased since depression was caused by Interferon medication which has

been discontinued.  Smith 0814.

## ARGUMENT

1. Standard of evaluation

Summary judgment is appropriate under Rule 56 (c) against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case on which

that party will bear the burden of proof at trial.  In such a situation, there can be no issue of

material facts because a failure of proof on an essential element of the non-moving party's case

necessarily renders all other facts immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323

(1986).  A party seeking summary judgment bears the responsibility of informing the District

Court of the basis for its motion and the motion should be granted so long as what is before the

District Court demonstrates the standard set forth in Rule 56 is satisfied.  *United States v.*

7

*Simons,* 129 F.3d 1386, 1388 (10th Cir. 1997), "[t]o support summary judgment, the movant need only point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law.  Summary judgment will then lie if the movant establishes entitlement to judgment as a matter of law, given the uncontroverted operative facts.  Factual disputes that are irrelevant, or unnecessary will not be counted.  The substantive law of the case determines which facts are material."  Id.  (Internal quotations and citations omitted.).

    2.  <u>Cruel and Unusual Punishment</u> .

    To prove a violation of the Eighth Amendment for failure to provide medical care "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To establish this type of claim, an inmate must show that his medical needs were serious, and that prison officials were deliberately indifferent to those needs. *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

    The deliberate indifference requirement has two components, an objective component requiring that the pain or deprivation be sufficiently serious, and a subjective component requiring that the offending officials act with a sufficiently culpable state of mind. *Perkins v. Kansas Dept. of Corrections*, 165 F3d, 803, 809 (10th Cir. 1999) (citing *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)).  Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Riddle*, 83 F.3d at 1203; *Wilson*, 501 U.S. at 297.  Inadvertent failure to provide adequate medical care does not rise to the level of a constitutional violation. *Riddle* 83 F.3d at 1203.  Neither does conduct amounting to medical malpractice. *Id.*; *Sealock v.*

8

*Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000).  Moreover, mere disagreement with the medical

judgment of prison doctors concerning treatment does not support a claim of cruel and unusual

punishment. *Olson*, 9 F.3d at 1477.

The facts show that the defendants were not deliberately indifferent to plaintiff's medical

condition.  Assuming *arguendo* that Hepatitis C is a serious medical condition[1], the evidence

establishes that defendants and other prison medical officials followed approved medical

protocol in evaluating plaintiff, monitoring his condition, and in explaining to plaintiff that the

side effects would be dangerous.  Ultimately plaintiff was treated for the Hepatitis C, with

predictable side effects, including joint pain and depression, and the treatment had to be

discontinued.

Plaintiff complains he should have been told in 1998 that he had Hepatitis C, but the

record shows that plaintiff was first tested and diagnosed in August 1999.  Plaintiff also claims

that his treatment was terminated wrongfully.  However, the record shows that plaintiff was

suffering from severe side effects from the interferon medication, including extreme pain in his

joints and severe depression. *See Exhibit 1*, at Smith 805-806; 812.

3.  <u>Qualified Immunity</u>.  The purpose of qualified immunity is to shield public officials

from undue interference with their duties and from potential threats of liability.  Qualified

immunity shields defendants not only from ultimate liability, but also from the burdens and

disruptions associated with trial.  It is an immunity from suit, protecting public officials from all

---

1 Exhibit 3, the Legislative Fiscal Analysis Report at Smith 940, shows that Hepatitis C is benign in 95% of reported cases.

9

the burdens of litigation, including discovery.  *Hannula v. City of Lakewood*, 907 F.2d 129, 130

(10th Cir. 1990); *Saucier v. Katz*, 121 S. Ct. 2151, 2156 (2001); *Hunter v. Bryant*, 502 U.S. 224,

227-28 (1991); *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001).

      Once the affirmative defense of qualified immunity is raised, the burden shifts to the

plaintiff to show the immunity is unwarranted.  The defense creates a rebuttable presumption that

the officers performed their duties properly.  *Medina v. Cram,* 252 F.3d 1124, 1128, 1130 (10th.

Cir. 2001).  Plaintiff bear a heavy two-part burden of showing that, (1) defendants' actions

violated a constitutional right, and (2) that the right allegedly violated was clearly established at

the time of the facts at issue.  *Id.* at 1128;  *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996);

*Wilson v. Meeks*, 52 F.3d 1547,1552 (10th Cir. 1995); *Saucier*, 121 S. Ct. at 2155.

      If the plaintiff successfully establishes the violation of a clearly established right, the

burden shifts to the defendants who must prove that there are no genuine issues of material fact

and that they are entitled to judgment as a matter of law.  *Medina*, 252 F.3d at 1128.  If the

plaintiff fails to satisfy either part of their burden, the Court must grant the defendants qualified

immunity.  *Medina*, 252 F.3d at 1128, *citing, Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th

Cir. 1995).

      In this case, although the plaintiff could show that the right to medical care was clearly

established, he cannot show that the defendants acted in violation of that constitutional right.

The medical record and other evidence establishes that defendants were not deliberately

indifferent to plaintiff's medical needs.  Therefore defendants are entitled to qualified immunity

at this juncture, and plaintiff's *Complaint* should be dismissed with prejudice.

10

## CONCLUSION

For the reasons developed above, plaintiff's *Complaint* should be dismissed with prejudice. Plaintiff's quarrel with the defendants and the rest of the prison medical staff is nothing more than a disagreement regarding the appropriate course of treatment for his medical condition. Differences over medical treatment do not state claims for deliberate indifference.

DATED this _____ day of _____, 2004.

Alain C. Balmanno
Assistant Attorney General
Attorney for Defendants

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing **MEMORANDUM IN SUPPORT**

**OF DEFENDANTS MOTION FOR SUMMARY JUDGMENT** was served by U.S. mail this

20th day of February, 2004, to the following:

Melvin Eugene Smith
Inmate #21101
Utah State Prison
P. O. Box 250
Draper, UT  84020

Corina Archuleta

**EXHIBIT LIST**

Exhibit 1        Excerpts from Medical Records

Exhibit 2        Declaration of Dr. Kennon Tubbs

Exhibit 3        Excerpt Legislative Fiscal Analyst Report

Exhibit 4        Hepatitis C Clinic Protocol

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.